UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES JOHNSON,<br><br>Plaintiff,<br><br>vs.<br><br>WELLMARK OF SOUTH DAKOTA, INC.<br>d/b/a/ WELLMARK BLUE CROSS AND<br>BLUE SHIELD OF SOUTH DAKOTA,<br><br>Defendant. | CIV. 19-4017-LLP<br><br>**MEMORDANDUM OPINION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO LIMIT CASE TO ERISA<br>ADMINISTRATIVE RECORD** |

Plaintiff, James Johnson ("Johnson"), filed a complaint against defendant Wellmark Blue Cross and Blue Shield of South Dakota ("Wellmark") challenging Wellmark's denial of benefits under an employer-sponsored health insurance plan governed by the Employee Retirement Income Security Act ("ERISA"). Pending before the Court is Wellmark's Motion to Limit Case to the Administrative Record. Doc. 10. The motion has been fully briefed by the parties, and for the following reasons, is granted in part and denied in part.

## FACTS

The Court will summarize the facts of this case in order to give context to the present dispute. Johnson was a participant in a Wellmark health insurance plan ("Plan") offered by his employer and governed by ERISA. Doc. 1, ¶¶ 1-2. In August of 2017, Johnson sustained serious injuries in an ATV accident. Doc. 1, ¶ 7. Johnson underwent emergency surgery on his spine but did not regain use of his legs and is now dependent on a wheelchair for mobility. Doc. 1, ¶ 9. After his surgery, Johnson was transferred to the Madonna Rehabilitation Hospital in Lincoln, Nebraska, to attend intensive inpatient rehabilitation treatment. Doc. 1, ¶¶ 10-11.

At the time Johnson was injured, he was a participant in an employer-sponsored plan through Wellmark. Doc. 1, ¶¶ 1, 6. Wellmark operates as both the plan administrator and the payor of the plan benefits. Doc. 12, ¶¶ 2-3, 13-1 at 37, 87. The policy grants Wellmark discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Doc. 13-1 at 37, 87. Specifically, the plan provides that:

1

We have the administrative discretion to determine whether you meet our written eligibility requirements, or to interpret any other term in this coverage manual. If any benefit described in this coverage manual is subject to a determination of medical necessity, unless otherwise required by law, we will make that factual determination.

Doc. 13-1 at 87.

The Plan defines a "medically necessary health care service" as "one that a provider, exercising prudent clinical judgment, provides to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and is:

- Provided in accordance with generally accepted standards of medical practice. Generally accepted standards of medical practice are based on:
    - Credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community;
    - Physician Specialty Society recommendations and the views of physicians practicing in the relevant clinical area; and
    - Any other relevant factors.
- Clinically appropriate in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease.
- Not provided primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of the illness, injury or disease.

Doc. 13-1 at 37. The Plan further provides that it will be construed in accordance with and governed by the laws of the State of South Dakota. Doc.13-1 at 89.

On September 21, 2017, Johnson's treating physician and treating physical therapists at Madonna Rehabilitation Hospital prescribed him a RT 300 FES cycle ("the Cycle"). Doc. 1, ¶ 11. The Cycle is a neuromuscular electrical stimulation device that is a component of a comprehensive rehabilitation program and activates up to twelve muscle groups with stimulation in a single therapy session. Doc. 1, ¶ 11. Some of the benefits of the Cycle for Johnson is to prevent muscle disuse atrophy, reduce muscle spasms, increase blood circulation and maintain or increase range of motion. Doc. 1, ¶ 12. The cost of the Cycle was $21,755.00. Doc. 1, ¶ 13.

On January 13, 2018, the Plan sent an Explanation of Benefits ("EOB") to Johnson denying coverage for the cost of the Cycle. Doc. 1, ¶ 14. There was no explanation for the denial. Doc. 1, ¶ 14.

On March 8, 2018, Johnson submitted a letter to Wellmark appealing its denial and on April 13, 2018, Wellmark denied his appeal, stating that the reason for the denial was because the Cycle was not "medically necessary." Doc. 1, ¶¶ 15-16. Wellmark's letter of denial stated in part:

> Based on Wellmark medical policy, the functional electrical stimulator (FES) RT300 RES cycle ergometer (also referred to as FES bicycle) is considered home exercise equipment even when being used for muscle atrophy, and not medically necessary. There is insufficient evidence the electrical neuromuscular stimulation provides any long term benefit in the rehabilitation of spinal cord patients. The evidence for decreasing contracture, preventing muscle loss or improving exercise capacity above and beyond that of simple rehabilitative techniques has not been proven.

Doc. 1-4.

Plaintiff sought an independent external review of Wellmark's final adverse determination through the South Dakota Division of Insurance. Docs. 1-4; 1-5; 5, ¶ 17; 13-1 at 82. The reviewer was selected by the South Dakota Division of Insurance from a list of approved independent review organizations compiled and maintained by the director. Doc. 5, ¶ 17; A.R.S.D. 20:06:53:14, 20:06:53:56, 20:06:53:55.

By letter dated August 28, 2018, National Medical Reviews's physician reviewer upheld Wellmark's decision denying coverage for the Cycle. Docs. 1, ¶ 19; 1-5. The physician reviewer reasoned that "after a spinal cord injury, most recovery occurs in the first six to 12 months," but that "recovery can extend beyond one year, and neurologic recovery continues for perhaps up to two years." Doc. 1-5. He also noted that Johnson was two years post injury and that further neurological recovery was unlikely. Doc. 1-5. Based on this and other findings as detailed in the letter, the physician reviewer concluded that:

> The [Cycle] would not treat [Johnson's] spinal cord injury and is being requested as a preventative measure and means of exercise. Although exercise is beneficial and highly recommended, it is no more medically necessary in this case than for any other individual. It is not medically necessary for the treatment of [Johnson's] condition.

Doc. 1-5.

Having exhausted his administrative remedies, on January 23, 2019, Johnson filed a complaint in federal district court alleging that "[Wellmark's] refusal to pay [him] benefits violates

the terms of the Plan, and [that Wellmark's] actions in administering [Johnson's] claim and in denying benefits were wrongful and an abuse of discretion." Doc. 1, ¶ 24.

## DISCUSSION

### I.      Overview of Johnson's ERISA claim

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

"[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 114 (1989). However, if the plan gives the administrator discretion to determine benefit eligibility or construe the terms of the plan, the administrator's decision is reviewed under a deferential abuse of discretion standard. *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008). Under this standard, the Court must defer to the decision made by the plan administrator unless the decision is arbitrary and capricious. *Id.; see also Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir. 2008) (stating that courts will not disturb the administrator's decision if it was reasonable, *i.e.*, where substantial evidence— "more than a scintilla but less than a preponderance"—exists to support the decision).

### II.     Wellmark's Motion

Pending before the Court is a motion filed by Wellmark seeking to limit this case to the ERISA administrative record. Doc. 10. In its opening brief in support of its motion, Wellmark states that Johnson seeks standard discovery on Wellmark's general case handling and history with external review organizations, as well as on whether Wellmark had additional justification for its decision in this case. Doc. 11 at 1-2. Johnson also seeks additional discovery on Wellmark's purported selection of the Independent External Reviewer in the external review process. Doc. 11 at 3.

Wellmark argues that because it has discretionary authority under the plan to determine benefit eligibility and construe the terms of the Plan, the Court must review its benefits determination for abuse of discretion and must confine its review to the administrative record. Even if the Court concludes that its review is *de novo*, Wellmark argues that the Court's review

should still be limited to the administrative record because Johnson has failed to show good cause for expanding the Court's review beyond the administrative record. Wellmark requests that the Court enter an order limiting discovery regarding, and consideration of, the case to the administrative record and for an amended scheduling order setting forth the dates for production of the administrative record and the parties' briefing deadlines with no trial date or other discovery deadline. Docs. 11, 14.

In response, Johnson argues that Wellmark is not entitled to a "preemptive prohibition" on discovery and that discovery disputes must be handled pursuant to Rule 37 of the Federal Rules of Civil Procedure. Doc. 12 at 3-4. Johnson contends that "[a] district court may admit additional evidence in an ERISA benefit-denial case [ ] upon a showing of good cause" and that a conflict of interest is present in this case because Wellmark is both the plan administer and pays the claims. Doc. 12 at 2, 4. Johnson argues that *de novo* review is appropriate because the discretionary clause included in the plan is prohibited under South Dakota law. Doc. 12 at 3. Johnson requests a court trial in this case in which he seeks to "put forth evidence that disputes the denial' and to introduce expert testimony to aid the Court in its *de novo* review of whether the Cycle qualifies as a "medically necessary" service under the Plan. Doc. 12 at 4-5.

## A. Conflict of Interest Discovery

### i. Legal Landscape

The general rule in ERISA cases is that a court's review is limited to evidence that was before the plan administrator in order to "ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." *Brown v. Seitz Foods, Inc., Disability Ben. Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) (citation omitted). A claimant is responsible for ensuring that evidence related to his or her medical condition is presented to the plan administrator and will not be allowed to reopen the record to submit additional evidence that is more favorable than the evidence considered by the administrator. *See Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1095 (8th Cir. 1992); *see also, Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (stating that plan participants are not entitled to supplement the court record with new evidence demonstrating that they are entitled to benefits); *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010) (stating that courts are prohibited from considering materials outside

5

administrative record where the extra-record materials are related to a claimant's eligibility for benefits). Thus, plaintiffs in ERISA cases are not generally entitled to discovery directed to establishing their eligibility for benefits. *Heil v. Unicare Life & Health Ins. Co.*, Civ. No. 13-0401, 2013 WL 5775920, at *1 (E.D. Mo. Oct. 25, 2013).

Discovery related to other areas may be appropriate, however. *See Winterbauer v. Life Ins. Co. of N. Am.*, Civ. No. 07-1026, 2008 WL 4643942, at *4 (E.D. Mo. Oct. 20, 2008) ("[S]ome limited discovery may still be appropriate in an ERISA case—even where the standard of review is deferential."). For example, some courts have held that discovery may be permissible even in deferential review cases to explore the nature and extent of a conflict of interest or procedural irregularity. *Sampson v. Prudential Ins. Co. of Am.*, Civ. No. 08-1290, 2009 WL 882407, at *2 (E.D. Mo. Mar. 26, 2009) ("[A] conflict or procedural irregularity cannot be considered in a vacuum. Discovery is required to explore the nature and extent of the purported conflict or irregularity at issue.").

Johnson contends that a structural and inherent conflict of interest is present in this case under *Metropolitan Life Insurance Co. v Glenn*, 554 U.S. 105, 108 (2008) because Wellmark, as plan administrator, "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." In *Glenn*, the Court made clear, however, that the existence of such a conflict of interest does not change the standard of review from deferential to *de novo* review. *Id.* at 115. Instead, the Court held that a conflict should be weighed as a factor[1] in determining whether the plan administrator has abused its discretion in denying benefits. *Id.* at 117. The Court stated that:

> [W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one.

. . .

---

[1] Other factors that may inform a court's analysis of whether an administrator abused its discretion include "whether the administrator's interpretation is 'inconsistent with the Plan's goals, whether it renders language of the plan meaningless, superfluous, or internally inconsistent, whether it conflicts with substantive or procedural requirements of ERISA, whether it is inconsistent with prior interpretations of the same words, and whether it is contrary to the Plan's clear language." *Jones v. ReliaStar Life Ins. Co.*, 615 F.3d 941, 945 (8th Cir. 2010) (citing *Erven v. Blandin Paper Co.*, 473 F.3d 903, 906 (8th Cir. 2007)).

> In such instances, any one factor will act as a tiebreaker when the other factors are
> closely balanced, the degree of closeness necessary depending upon the tiebraking
> factor's inherent or case-specific importance.

*Id.* at 117. For example, the Court stated that when an insurer has a history of biased claims administration, the conflict may be given substantial weight. *Id.* However, a conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Id.*

"Although the *Glenn* Court ruled that a [p]lan [a]dministrator's conflict of interest is a factor that can be explored in an ERISA case, it did not discuss how a plaintiff goes about establishing such a conflict." *Almeida v. Hartford Life & Accident Ins. Co.*, Civ. No. 09-1556, 2010 WL 743520, at *4 (D. Colo. Mar. 2, 2010). Specifically, the Supreme Court did not address whether discovery was permitted and, if so, the scope of that discovery. *Id.* The Eighth Circuit has "not yet decided whether [the Supreme Court's decision in] *Glenn* affects discovery limitations under ERISA." *Atkins v. Prudential Ins. Co.*, 404 Fed.App. 82, 85 (Dec. 13, 2010) (citing *Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773, 775 n.2 (8th Cir. 2009)).

As noted in *Winterbauer v. Life Insurance Company of North America*, there are competing considerations in evaluating the permissible bounds of discovery in an ERISA case involving when an inherent conflict of interest where a plan administrator both evaluates and pays claims. 2008 WL 4643942, at *4. On the one hand, there is no practical way to determine the extent of the administrator's conflict of interest without looking beyond the administrative record. *Id.* (citing *Albert v. Life Ins. Co. of N. Am.*, 156 F. App'x 649, 653 (5th Cir. 2005)). On the other hand, situations where the plan administrator both evaluates and pays the claims are commonplace, *id.* (citing *Glenn*, 128 S.Ct. at 2353 (Roberts, C.J., concurring)), and thus discovery decisions in this area of the law often turn on case-specific factors, *id.* (citing *Glenn*, 128 S.Ct. at 2351).

Courts considering discovery disputes in the aftermath of *Glenn* have reached different decisions, with some courts allowing varying degrees of discovery to proceed and other courts not allowing the plaintiff to engage in discovery. *See Winterbauer*, 2008 WL 4643942 at *4-5 (listing cases). "To a large extent, the different outcomes reflect the courts' varying interpretations of

*Glenn* itself. While some courts have found *Glenn* did not change the discovery rules surrounding ERISA benefit cases, other courts have reached the exact opposite conclusion." *Id.* at *5.

In *Glenn*, the Supreme Court cautioned against adopting any special procedural or evidentiary rules focused narrowly upon the evaluator/payor conflict. *Glenn*, 554 U.S. at 116. The Court stated that "special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." *Id.* at 116-17.

Some courts have interpreted this language from the Supreme Court in *Glenn* to mean that it must apply Federal Rule of Civil Procedure 26(b) to discovery requests seeking information related to a dual role conflict of interest. *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1162 (10th Cir. 2010) (stating the "*Glenn's* admonition against special rules . . . commands that we not create any special rules for discovery related to a dual role conflict of interest [and] must [i]nstead [ ] apply [Rule 26(b)] . . . just as we would apply that rule to other discovery requests."); *see also Myers v. Prudential Ins. Co. of Am.*, 581 F.Supp.2d 904, 911-13 (E.D. Tenn. 2008) (allowing limited discovery under Federal Rules of Civil Procedure in dual role conflict of interest case); *Hogan-Cross v. Metro. Life Ins. Co.*, 568 F.Supp.2d 410, 416 (S.D.N.Y. 2008) (applying Federal Rules of Civil Procedure to discovery in dual role conflict of interest, stating that defendant's "attempts to cut off discovery on the ground that it never or rarely should be permitted in these cases, whatever their merits before *Glenn*, no longer have merit"); *Wilcox v. Wells Fargo & Co. Long Term Disability Plan*, 287 F.App'x 602, at *2 (9th Cir. 2008) ("*Glenn* materially altered the standard of review applicable to the review of a plan administrator's denial of benefits under ERISA, permitting consideration of evidence outside of the administrative record to determine the appropriate weight to accord the conflict of interest factor."); *Whipple v. Unum Group Corp.*, Civ. No. 10-5075, 2012 WL 589565, at *3 (D.S.D. Feb. 22, 2012) (J. Viken) (citing *Hacket v. Standard Ins. Co.*, Civ. No. 06-5040, 2010 WL 1494772 (D.S.D. Apr. 14, 2010) (J. Viken)); *Hackett v. Standard Ins. Co.*, Civ. No. 06-5040, 2010 WL 1494772, at *3-4 (D.S.D. Apr. 14, 2010) (J. Viken) (stating that the landscape has changed post-*Glenn* and that the plaintiff must be allowed to make inquiry into the factors which will affect the weight the court must give the conflict of interest analysis).

Rule 26(b)(1) provides in relevant part, "[u]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Although Rule 26(b) is broad, courts that have applied this rule to discovery requests seeking information related to a dual role conflict of interest in ERISA cases have acknowledged that it "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy*, 619 F.3d at 1163; *see also Myers*, 581 F.Supp.2d at 913 (stating that applying the Federal Rules of Civil Procedure to investigate a dual role conflict of interest "does not, however, mean the entire universe of relevant evidence is opened up for discovery."). A court "must limit . . . the extent of discovery otherwise allowed by these rules" if the proposed discovery is disproportionate to the needs of the case "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1), (2)(C)(iii). In *Murphy*, the Tenth Circuit Court of Appeals stated that "[i]n exercising its discretion over discovery matters under Rule 26(b), district courts will often need to account for several factors [in ERISA cases] that will militate against broad discovery." 619 F.3d at 1163.

> First, while a district court must always bear in mind that ERISA seeks a fair and informed resolution of claims, ERISA also seeks to ensure a speedy, inexpensive, and efficient resolution of those claims. And while discovery may, at times, be necessary to allow a claimant to ascertain and argue the seriousness of an administrator's conflict, Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.
>
> . . .
>
> Second, in determining whether a discovery request is overly costly or burdensome in light of its benefits, the district court will need to consider the necessity of discovery. For example, the benefit of allowing detailed discovery related to the administrator's financial interest in the claim will often be outweighed by its burdens and costs because the inherent dual role conflict makes that financial interest obvious or the substantive evidence supporting denial of a claim is so one-sided that the result would not change even giving full weight to the alleged conflict. Similarly, a district court may be able to evaluate the effect of a conflict of interest on an administrator by examining the thoroughness of the administrator's review, which can be evaluated based on the administrative record.

*Id.*

Other courts have interpreted the Supreme Court's admonition in *Glenn* against adopting special procedural rules in dual conflict of interest cases to mean that circuit case law pre-*Glenn* applies to discovery issues. *See, e.g. Williamson v. Hartford Life & Accident Ins. Co.*, Civ. No. 09-0948, 2010 WL 993675 at *1 (E.D. Ark. Mar. 17, 2010) (stating that under existing Eighth Circuit law, a plaintiff is required to show good cause to permit discovery in an ERISA case where no conflict of interest is apparent from the administrative record); *Singleton v. Hartford Life & Accident Ins. Co.*, Civ. No 08-0361, 2008 WL 3978680, at *1 (E.D. Ark. Jul. 29, 2008) ("Because *Glenn* did not change the law, existing Eighth Circuit law applies."). In *Sanders v. Unum Life Insurance Company of America*, the district court for the Eastern District of Arkansas rejected the plaintiff's argument that the *Glenn* court intended that the rules of discovery ordinarily applicable in civil cases should apply in ERISA cases. Civ. No. 08-0421, 2008 WL 4493043, at *3 (E.D. Ark. Oct. 2, 2008). The court in *Sanders* stated that,

> When the Supreme Court said that it was not necessary or desirable for courts to create special burden-of-proof rules or other special procedural or evidentiary rules "focused narrowly upon the evaluator/payor conflict," it did so as a part of the explanation that the conflict was simply one of many factors to be taken into account in reviewing a claim to determine whether the fiduciary abused its discretion. In other words, the Supreme Court intended to say that cases in which the same entity evaluates claims for benefits and pays claims should be governed by the rules that govern other ERISA claims.

*Id.*

Prior to *Glenn*, in this circuit, courts permitted discovery supplementation of the record if a conflict of interest was not apparent from the record and if the plaintiff showed good cause. *See Menz v. Proctor & Gamble Health Care Plan*, 520 F.3d 865, 871 (8th Cir. 2008). However, because a conflict of interest or serious procedural irregularity will ordinarily be apparent on the face of the administrative record or will be stipulated by the parties, the Eighth Circuit Court of Appeals acknowledged that a "district court will only rarely need to permit discovery and supplementation of the record to establish these facts." *Farley v. Ark. Blue Cross and Blue Shield*, 147 F.3d 774, 776 n.4 (8th Cir. 1998).

In *Frerichs v. Hartford Life & Accident Ins. Co.*, Civ. No. 10-3340, 2011 WL 13352169, at *6 (D. Minn. May 17, 2011), the court applied pre-*Glenn* precedent to a discovery dispute in an

ERISA case. There, a plaintiff sought discovery to show that UDC, the organization that arranged for an independent medical record review of plaintiff's disability status, was not independent and was biased. *Id.* at *2. The court noted that in *Glenn*, the conflict of interest was inherent in the structure of the plan and stated that, in such cases, discovery would often not be necessary. *Id.* at *4. The court stated that nothing in *Glenn's* holding "compels or requires additional evidence gathering in most cases, and therefore, an ERISA plaintiff must still show good cause of permitting discovery consistent with existing Eighth Circuit precedent." *Id.* The court concluded, however, that the plaintiff had established good cause to conduct limited discovery regarding UDC's relationship with the insurer for the purpose of attempting to establish a potential biased claim evaluation on the part of UDC. *Id.* at *6. The court noted that plaintiff had established that UDC and the insurer had a close relationship that may result in bias on the part of UDC physicians who receive a majority of their business from the insurer.[2] *Id.* The Court allowed discovery into whether the reviewing physician had a history of biased evaluations for the insurer, but concluded that "UDC evaluations that were conducted by other physicians on other cases [were] not relevant to establishing the existence of a bias in [the] present case without a stronger showing of good cause on Plaintiff's part." *Id.*

##### ii.    *Application to Case*

Wellmark argues that there is no conflict of interest to explore in this case in discovery outside the administrative record. In its brief in support of its motion to limit case to administrative record, Wellmark stated that in its letter denying the August 2018 appeal, it relied on the opinion of a reviewing physician employed by National Medical Reviews in Pennsylvania, an independent review organization. Wellmark explains that the independent review organization was selected from a list that was pre-approved by the director of the Division of Insurance and was not in any way directed or influenced by Wellmark. Doc. 11 at 3 (citing A.R.S.D. 20:06:53:55, 20:06:53:56, 20:06:53:14). Wellmark argues that there is no financial incentive for a third-party reviewer to inappropriately deny claims when selected by the Division of Insurance, and thus, there is no conflict of interest to explore via discovery. Doc. 11 at 3.

---

[2] In support of his argument, plaintiff submitted UDC marketing materials; a depositions of Jonathon Strang, M.D., who is the sole owner of UDC; and other federal district court cases addressing Hartford's relationship with UDC. *Id.* at *5.

Even if this Court was to apply the Federal Rules of Civil Procedure in resolving this discovery dispute relating to a conflict of interest as other courts in this district have done, this Court concludes that under the specific facts of this case, the burden of discovery into any bias on behalf of Wellmark outweighs its likely benefit. In *Myers*, the court, citing to *University Hospitals of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n.4 (6th Cir. 2000), stated that "[c]ourts should be particularly vigilant in situations where . . . the plan sponsor bears all or most of the risk of paying claims, and also appoints the body designated as the final arbiter of such claims. Under these circumstances, the potential for self-interested decision-making is evident." In this case, however, Wellmark did not appoint the final arbiter of Johnson's claim. Instead, Johnson exercised his right to an external review through the South Dakota Division of Insurance. *See Docs.* 1-4; 1-5; 5, ¶ 17; 13-1 at 82. The agency, rather than Wellmark, selected the independent review organization. *See* A.R.S.D. 20:06:53:14, 20:06:53:56, 20:06:53:53. Under these facts, there is no incentive for the independent review organization to "inappropriately deny claims so as to extend or otherwise enhance [its] longstanding financial relationship with the administrator." *See Whipple v. Unum Group Corp.*, Civ. No. 10-5075, 2012 WL 589565, at *3 (D.S.D. Feb. 22, 2012); *see also Jon N. v. Blue Cross Blue Shield of Massachusetts*, 684 F.Supp.2d 190, 200 (D. Mass. 2010) ("Plaintiffs have clearly 'taken advantage of an external review process that is expressly designed to reduce the potentially pernicious effects of Blue Cross's structural conflict, and Blue Cross's conflict of interest has been diminished 'to the vanishing point' as a result.'") (citing *Smith v. Blue Cross Blue Shield of Massachusetts, Inc.*, 597 F.Supp.2d 214, 220 (D. Mass. 2009)).

Moreover, as discussed in more detail below, the Court will be applying a *de novo* review to Wellmark's benefits denial. Unlike cases involving an abuse of discretion standard of review where conflict of interest and procedural irregularities are relevant to a court's merits determination, conflicts and procedural irregularities are less relevant when the court conducts its own review of the evidence without deferring to the administrator's prior determinations. *See, e.g., Liyan He v. Cigna Life Ins. Co. of New York*, 304 F.R.D. 186, 188 (S.D.N.Y. 2015) ("[D]iscovery in cases that will ultimately be subject to *de novo* review should normally be designed to cast light on conflicts and procedural irregularities that might have affected the completeness of the administrative record."); *Gonda v. Permanente Med. Group, Inc.*, 300 F.R.D. 609, 613 (N.D. Cal. 2014).

In sum, given that the Court is conducting a *de novo* review and that an independent entity appointed by the South Dakota Division of Insurance gave an opinion affirming Wellmark's denial on the basis of "medical necessity," Johnson is precluded in this case from conducting discovery into the nature and extent of Wellmark's conflict of interest as administrator and payor of claims.

## B. Consideration of Extra-Record Evidence

Johnson states that his case involves technical evidence and that part of the administrative record includes documentation of his improvement when he used the Cycle during his rehabilitation at Madonna Rehabilitation. Doc. 12 at 4. Johnson wants to introduce expert testimony that was not before the administrator to aid the Court in interpreting the charts and graphs showing his improvement with the Cycle and to put forth certain unspecified evidence disputing Wellmark's denial on the basis of "medical necessity." Doc. 12 at 4.

Johnson argues that *de novo* review is appropriate because the discretionary clause in the Plan violates South Dakota's prohibition on discretionary clauses. Rule 20:06:52 of the Administrative Rules of South Dakota provides that:

> A discretionary clause is not permitted in any individual or group health policy. No policy offered or issued in this state by a health carrier or plan to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services may contain a discretionary clause or similar provision purporting to reserve discretion to the health carrier or plan to interpret the terms of the policy or to provide standards of interpretation or review that are inconsistent with the laws of this state. The provisions of this rule apply to any health insurance policy issued or renewed after June 30, 2008.

A.R.S.D. 20:06:52:02. In response to the Court's Order of January 27, 2020, the parties submitted a stipulation stating Johnson's policy was originally issued on January 1, 2016. Doc. 18. Johnson argues that the Court may consider extra-record evidence in conducting a *de novo* review of Wellmark's denial.

### *1. Applicability of South Dakota discretionary clause ban to the Plan*

The Plan provides that it will be construed in accordance with and governed by the laws of the State of South Dakota to the extent not superseded by the laws of the United States. Doc. 13-1.

To the extent an area of state law is not preempted by ERISA, federal courts will give force to a choice-of-law clause in an ERISA plan as long as the clause is not unreasonable or fundamentally unfair. *Brake v. Hutchinson Tech. Inc. Grp. Disability Income Ins. Plan*, 774 F.3d 1193, 1197 (8th Cir. 2014).

### i. Preemption

Although ERISA preemption is generally broad, state statutes or regulations that regulate insurance are "saved" from preemption under 29 U.S.C. § 1144(b)(2)(A). *Id.* at 1196. The Supreme Court has set forth a two-part test to determine whether state laws regulating insurance are saved from preemption. *Id.* at 1196, n.3 (citing *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003)). A state insurance statue or regulation is not preempted if it (1) is "specifically directed toward entities engaged in insurance" and (2) "substantially affect[s] the risk pooling arrangement between the insurer and the insured." *Id.* (quoting *Miller*, 538 U.S. at 342) (commonly referred to as "the *Miller* test").

The Eighth Circuit has not yet addressed whether discretionary clause bans are saved from preemption. In *Brake v. Hutchinson Technology Inc. Group Disability Income Insurance Plan*, although the court acknowledged that the Ninth and Sixth Circuit Court of Appeals had held that state discretionary clause bans were not preempted by ERISA, the court concluded that South Dakota's discretionary clause ban did not negate the discretionary language in the group health insurance plan at issue because it found that the plan was governed by Minnesota law. 774 F.3d 1193, 1196-97 (8th Cir. 2014) (citing *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 844-45 (9th Cir. 2009) and *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 608-09 (6th Cir. 2009)). In *Nicolson v. Standard Insurance Company*, the court held that the district court was correct in reviewing the benefits determination for an abuse of discretion because it found that neither the policy, nor anything else in the administrative record, demonstrated that the Arkansas ban on discretionary clauses applied to the disability benefits policy at issue in that case. 780 Fed.Appx. 381, 383 (8th Cir. 2019).

In considering the first prong of the *Miller* test, "[i]t is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies." *Morrison*, 584 F.3d at 842; *Miller*, 538 U.S. at 338 (stating that Kentucky's laws providing that any health insurer "may not discriminate against any willing provider 'regulates'

insurance by imposing conditions on the right to engage in the business of insurance."). The Court concludes that South Dakota's discretionary clause ban is specifically directed to companies engaged in insurance and thus satisfies the first prong of the *Miller* test.

Thus far, four other circuits have addressed whether discretionary clause bans satisfy the second *Miller* prong. Of those four, three have found that discretionary bans alter the scope of permissible bargains between insurers and insured, thereby significantly affecting the risk pooling arrangement. *See Fontaine v. Metro. Life Ins. Co.*, 800 F.3d 883, 889 (7th Cir. 2015); *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 845 (9th Cir. 2009); *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 607 (6th Cir. 2009). Although the Tenth Circuit held that a Utah ban did not substantially affect the risk pooling arrangement, it found so because the Utah ban provided an exception for employee benefit plans governed by ERISA that contained certain safe-harbor language. *Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1149 (10th Cir. 2009). The *Hancock* court noted, however, that if the Utah ban had "imposed a blanket prohibition on the use of discretion granting clauses, we would have a different case." *Id.* at 1149.

The Court finds the reasoning in the Seventh, Ninth, and Sixth Circuit cases cited above to be persuasive and accordingly concludes that the South Dakota discretionary clause ban satisfies the second prong of the *Miller* test. Moreover, contrary to the Utah discretionary ban, the South Dakota ban is a blanket prohibition on discretionary clauses.

For these reasons, the Court concludes that South Dakota's ban on discretionary clauses is not preempted by ERISA.

    *ii.*    *Reasonableness and fairness of enforcing choice-of-law provision*

Having concluded that A.R.S.D. 20:06:52:02 is saved from federal preemption, the Court finds nothing unreasonable or fundamentally unfair about enforcing the Plan's South Dakota choice-of-law provision. Since the Plan was a group employment plan written and issued to a South Dakota employer. Doc. 1, ¶1. *See id.* (citing *Hamilton v. Std. Ins. Co.*, 516 F.3d 1069, 1073 (8th Cir. 2008) (holding that when an ERISA benefit plan is a group employment plan as opposed to a single policy, it is "issued" to the employer rather than each individual employee)).

    *2. De novo review applies*

The Court must next determine the effect of South Dakota's prohibition on discretionary clauses on the standard of review to be applied to Wellmark's benefits determination in this case. Johnson argues that *de novo* review is appropriate because the discretionary clause in the Plan violates a South Dakota's prohibition on discretionary clauses.

Many courts that have addressed this issue have concluded that regulations banning discretionary clauses in insurance plans such as A.R.S.D. 20:06:52:02 have the effect of voiding a plan's discretionary clause and have thus applied a *de novo* standard of review to an administrator's benefits determination in such cases. *See, e.g., Nichols v. Reliance Std. Life Ins. Co.*, 924 F.3d 802, 808 n.4 (5th Cir. 2019) ("We review a denial *de novo* only '[f]or plans that do not have valid [discretionary] clauses.'") (citing *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018)); *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan Number 625*, 856 F.3d 686, 695 (9th Cir. 2017) ("Because California['s] [discretionary clause ban] applies to [the health and welfare benefits plan], the district court should have voided the discretionary clauses and reviewed Orzechowski's claim de novo."); *Jackson v. Aetna Life Ins. Co.*, Civ. No. 16-15837, 2017 WL 6888344, at *4 (E.D. La. Dec. 19, 2017) ("Texas law mandates that the plan's discretionary clause is void."); *Osborn by & through Petit v. Metro. Life Ins. Co.*, 160 F.Supp.3d 1238, 1249 (D. Or. 2016) (stating that if the policy is classified as disability insurance, then Washington's ban on discretionary clauses in disability insurance policies would void the grant of discretion to the insurance company and the standard of review would be *de novo*); *Davis v. Unum Life Ins. Co. of Am.*, Civ. No. 14-0640, 2016 WL 1118258, at *3 (E.D. Ark. Mar. 22, 2016) (stating that a court must conduct a *de novo* review of an administrator's discretionary benefits determination due to Arkansas's ban on discretionary clauses in disability income policies); *Jacob v. Unum Life Ins. Co. of Am.*, Civ. No. 16-17666, 2017 WL 4764357, at *5 (E.D. La. Oct. 20, 2017) (stating that because the Plan's discretionary clause is not valid under Texas law, the standard of review is de novo).

The Court finds these cases to be persuasive and concludes that because A.R.S.D. 20:06:52:01(3) applies to the Plan, the discretionary clause therein in voided and the Court's review of Wellmark's benefits denial is *de novo*. The Court concludes that this approach is consistent with prior decisions issued by this District. In *Brake v. Hutchinson Technology Inc.*, this Court rejected the plaintiff's argument that the court's review should be *de novo* pursuant to

A.R.S.D. 20:06:52:01(3), because the Court found that the plan at issue in that case was issued prior to the September 8, 2008, effective date of South Dakota's discretionary clause ban. Civ. No. 12-4217, 2013 WL 11130935 (D.S.D. Oct. 9, 2013) (J. Piersol). And while Wellmark cites to *Hillenbrand v. Wellmark of South Dakota, Inc.*, in support of its argument that an abuse of discretion standard should apply, the district court noted in that case that the parties agreed that an abuse of discretion standard applied and there were no facts in the opinion regarding when the health insurance plan at issue in that case was issued or renewed and thus, whether South Dakota's discretionary clause ban applied. 262 F.Supp.3d 904, 910 (D.S.D. 2017) (J. Schreier).

### 3. *Extra-Record Evidence May be Admissible on De Novo Review*

Johnson states that his case involves technical evidence and that part of the administrative record includes documentation of his improvement when he used the Cycle during his rehabilitation at Madonna Rehabilitation. Doc. 12 at 4. Johnson wants to introduce expert testimony to aid the Court in interpreting the charts and graphs showing his improvement with the Cycle and to put forth certain unspecified evidence disputing Wellmark's denial on the basis of "medical necessity." Doc. 12 at 4. The Court is unclear what other extra-record evidence, if any, Johnson seeks to introduce.

Wellmark contends that the Court's review is limited to the administrative record and urges the Court to enter an amended scheduling order setting forth the dates for production of the administrative record and the parties' briefing deadlines, with no trial date or other discovery deadlines. Doc. 14 at 3.

As detailed above, the Court's review of Wellmark's benefits decision in this case is *de novo*. The Eighth Circuit Court of Appeals has stated that if it is necessary for adequate *de novo* review of the fiduciary's decision, the district court may allow the parties to introduce evidence in addition to that presented to the fiduciary. *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993). The Eighth Circuit has made clear, however, that "to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators, the district court should not exercise this discretion absent good cause to do so." *Id.*

In *Donatelli v. Home Ins. Co.*, the Eighth Circuit Court of Appeals cited with approval the Fourth Circuit's decision in *Quesinberry v. Life Insurance Company of North America*, 987 F.2d

1017 (4th Cir. 1993). 992 F.2d 763, 765 (8th Cir. 1993). In *Quesinberry*, the court stated that under a *de novo* standard, a district court should ordinarily restrict its review to the administrative record "except where the district court finds that additional evidence is necessary for resolution of the claim." 987 F.2d at 1026-27. This rule provides "district courts with flexibility to admit additional evidence in limited circumstances . . . to address the varied situations in which the administrative record alone may be insufficient to provide proper de novo review." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1203 (10th Cir. 2002); *Quesinberry*, 987 F.2d at 1025-26. "[T]he party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review." *Hall*, 300 F.3d at 1203.

In *Quesinberry*, the court provided the following non-exhaustive "exceptional circumstances" that may warrant exercise of the court's discretion to allow additional evidence beyond the administrative record in its *de novo* review:

> [C]laims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.* at 1027. The court added that "the introduction of evidence is not required" in cases falling under one or more of these factors. *Id.* "A district court may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense." *Id.*

The court in *Quesinberry* stated that in determining whether to grant a motion to introduce evidence not presented to the plan administrator, the district court should address why the proffered was not submitted to the plan administrator. *Id.* The court stated,

> If the administrative procedures do not allow for or permit the introduction of the evidence, then its admission may be warranted. In contrast, if the evidence is cumulative of what was presented to the plan administrator, or is simply better evidence than the claimant mustered for the claim review, then its admission is not

necessary. If the court if faced with a complex medical issue on which testimony from experts is necessary for an adequate understanding of the issue and the administrative procedures do not have a mechanism for taking such testimony, allowing such testimony would be appropriate.

*Id.*

The court in *Quesinberry* concluded that the district court did not abuse its discretion in admitting live expert medical testimony regarding the complex issue of the insured's cause of death. *Id.* Such testimony, the court stated "could facilitate the understanding of complex medical terminology and causation through an exchange of questions and answers between the experts, counsel, and the court. *Id.* The court noted that the plaintiff's claim for accidental death benefits "also involved the legal interpretation of a key provision in the insurance policy, namely the phrase 'loss resulting directly and independently of all other causes from bodily injuries caused by accident.'" *Id.*

In *Donatelli*, the district court was tasked with conducting a *de novo* review of whether a claim for accidental death benefits fell within the exclusion for "any loss caused by suicide . . . while sane." 992 F.2d at 764. Applying the principles iterated by the court in *Quesinberry*, the district court conducted a three-day trial of Donatelli's ERISA benefits claim. *Id.* The parties introduced the administrative record as well as expert testimony concerning whether the insured was sane when he committed suicide. *Id.* On review, the court of appeals concluded that that the district court did not abuse its discretion in conducting its *de novo* review upon a somewhat expanded factual record because expert testimony was needed to aid the district court in its determination of whether the insured was sane when he committed suicide. *See* 992 F.2d at 765.

In *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, which was cited by the court in *Quesinberry*, the Second Circuit Court of Appeals held that the district court did not err in admitting expert testimony regarding the nature and treatment of whether non-surgical treatment of temporomandibular joint dysfunction (TMJ) was medical or dental in nature because it related to the proper interpretation of the terms of the plan. 936 F.2d 98, 104 (2d Cir. 1991). In so holding, the court reasoned that:

> [E]vidence regarding the proper interpretation of the terms of the plan, like the expert testimony here, would be treated differently from evidence intended to establish a particular historical fact regarding the claimant, like the evidence of the date of total disability at issue in *Perry [v. Simplicity Engineering*, 900 F.2d 963,

966-67 (6th Cir. 1990)]." Consideration of evidence relevant to plan interpretation on de novo review does not implicate the Sixth Circuit's concern that courts would become "substitute plan administrators," particularly since de novo review under the *Firestone* standard presupposes that the administrator's role does not include discretion to interpret the terms of the plan.

. . .

Moreover, we would be reluctant in any event to condition the admissibility of expert testimony as to the meaning of the terms of a plan on its prior presentation to an administrator. An individual claimant under a health benefit plan may be obligated to provide particulars regarding the claimant's condition. However, requiring the claimant to support at the administrative level a disputed plan interpretation with evidence from experts would impose an unduly heavy burden, particularly when the administrator, like Blue Cross, already has superior access to the relevant expertise.

*Id.* at 104-05.

In contrast to *Quesinberry*, *Donatelli*, and *Masella*, wherein the courts concluded that expert testimony was necessary in aiding the court in its *de novo* review of the plan's terms, in *Davidson v. Prudential Insurance Co. of America*, the Eighth Circuit Court of Appeals concluded that the district court had not erred in refusing in its *de novo* review to open the administrative record and include a vocational report prepared after litigation had started. 953 F.2d 1093, 1095 (8th Cir. 1992). The district court was tasked in its *de novo* review of determining whether the plaintiff was "unable to engage in any and every gainful occupation for which he [was] reasonably fitted for by education, training or experience" and thus qualified for long-term disability benefits under the terms of the policy. *Id.* at 1094. On appeal, the court found that Davidson's conditions had not changed since his claim was denied and that he knew what his medical limitations were when he first sought continuing long-term disability benefits. *Id.* at 1095. In affirming the district court's decision, the Court of Appeals reasoned that:

[I]f Davidson believed the evidence he now offers was necessary for Prudential to make a proper benefits determination, Davidson should have obtained this evidence and submitted it to Prudential. Having failed to do so, Davidson's offer of additional evidence at this point amounts to nothing more than a last-gasp attempt to quarrel with Prudential's determination that he is capable of gainful employment.

*Id.*

In the case at bar, Johnson seeks to introduce expert testimony to aid the Court in interpreting the charts and graphs showing his improvement with the Cycle and to put forth certain

unspecified evidence disputing Wellmark's denial on the basis of "medical necessity." Doc. 12 at 4. The Court is unclear what other extra-record evidence, if any, Johnson seeks to introduce.

The Court doubts that expert testimony is "necessary" to aid it in interpreting the charts and graphs showing Johnson's improvement with the Cycle. Additionally, this Court declines at this point to admit other extra-record evidence disputing Wellmark's denial on the basis of "medical necessity." Johnson has not specified what evidence he seeks to introduce, why he was unable to present such evidence to the administrator during the administrative process, nor has he noted any other "good cause" or "exceptional circumstances" that would justify the Court's consideration of extra-record evidence disputing Wellmark's denial. This is not a case like *Quesinberry*, *Donatelli*, or *Masella* in which expert testimony is necessary to aid the court in its interpreting of the terms of the plan, such as whether an insured was sane when he committed suicide or whether non-surgical treatment of TMJ is medical or dental in nature under the terms of the plan. The Court finds that this case is more similar to *Davidson*. In *Davidson*, the court was tasked with determining whether the administrator erred in concluding that the insured plaintiff qualified for long-term disability benefits under the terms of the plan for being "unable to engage in any and every gainful occupation for which he [was] reasonably fitted for by education, training, or experience." Here, the Court must determine whether the administrator erred in determining that the Cycle was not a "medically necessity" as it too is defined under the terms of the Plan.

That being said, this case is still in its early stages. The administrative record has not yet been produced and the Court cannot definitively determine whether extra-record evidence is necessary to aid the Court in its *de novo* review. Accordingly, the Court is unwilling to issue an order at this point limiting the case to the administrative record. Johnson will bear the burden of proving that "good cause" exists for the Court to consider any such evidence.

## C.     Bench Trial

Johnson seeks the right to have a court trial to put forth evidence that disputes Wellmark's denial.

Wellmark requests that the Court enter an order limiting discovery regarding, and consideration of, the case to the administrative record and for an amended scheduling order setting

forth the dates for production of the administrative record and the parties' briefing deadlines with no trial date or other discovery deadline. Docs. 11, 14.

Frequently, parties involved in a case seeking review of an ERISA benefits decision move for summary judgment on the administrative record. The Eighth Circuit has recognized that "[c]ourts have struggled with the use of summary judgment to dispose of ERISA cases," but "decline[d] to decide the propriety of the use of summary judgment procedures" in cases in which the issue was not raised by the parties. *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 951 n.3 (8th Cir. 2010). Although the First and Tenth Circuit Court of Appeals have held that courts may grant summary judgment despite disputed material facts in the administrative record, *see Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005) (describing summary judgment as the "vehicle" to resolve ERISA benefit disputes); *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010), the Court concludes that this approach is inconsistent with Rule 56 of the Federal Rules of Civil Procedure which requires the Court to view all facts in the light most favorable to the non-moving party and grant all reasonable inferences in his favor. The Court agrees with the Second and Ninth Circuit Courts of Appeals that have held that courts must deny summary judgment when the administrative record reflects factual discrepancies. *See, O'Hara v. Nat'l Union Fire Ins. Co.*, 641 F.3d 110, 116 (2d Cir. 2011); *Kearney v. Standard Insurance Company*, 175 F.3d 1084, 1094 (9th Cir. 1999). However, in such a case, that does not mean that Court will conduct a full civil trial. As stated by the Ninth Circuit Court of Appeals in *Kearney v. Standard Insurance Company*,

> If the trial starts from scratch, and any evidence is admissible whether it was furnished to the administrator or not, then the effect of a genuine issue of fact is to change the question. Instead of de novo review testing whether the individual was entitled to benefits based on the evidence before the administrator and such other evidence as might be admissible under the restrict rule in *Mongeluzo*[3], "review" would be converted into a trial de novo based on evidence entirely unrestricted by what had been presented to the administrator.
>
> . . .

---

[3] In *Mongeluzo*, the court stated that extra-record evidence should be considered in a court's de novo review of the benefit decision "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review." *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (quoting *Quesinberry*, 987 F.2d at 1025).

The Supreme Court has reminded us of "the public interest in encouraging the formation of employee benefit plans" and also "the need for prompt and fair claims settlement procedures."

A full trial de novo in any ERISA dispute where there was a genuine issue of fact as to whether the individual qualified for a benefit would undermine these policies. Trial de novo on new evidence would be inconsistent with reviewing the administrator's decision about whether to grant the benefit. The means that suggest itself for accomplishing trial of disputed facts, while preserving the value of the fiduciary review procedure, keeping costs and premiums down, and minimizing diversion of benefit money to litigation expense, is trial on the administrative record, in cases where the trial court does not find it necessary under *Mongeluzo* to consider additional evidence.

175 F.3d 1084, 1094 (9th Cir. 1999). A trial *de novo* is quite another thing from a *de novo* review. Should the Court conclude that a bench trial on the papers is appropriate, the Court notes that although Rule 43(a) of the Federal Rules of Civil Procedure requires that "testimony" be taken in open court, the record should be regarded as being in the nature of exhibits, in the nature of documents, which are routinely a basis for findings of fact even though no one reads them out loud. *Id.* The Court agrees with the court in *Kearney* that this is "vastly less expensive to all parties, accomplishes the policies enacted as part of the statute, and also gives significance, which would otherwise largely evaporate, to the administrator's internal review procedure required by the statute. *Id.* at 1095.

However, as this Court stated above, given this case is in the early stages and the administrative record has not yet been produced, the Court is unable to definitively conclude that extra-record evidence is necessary to the Court's *de novo* review in this case. Thus, the Court is unable to determine at this juncture whether it may confine its review to a bench trial on the administrative record and will schedule a court trial date for this matter, pending resolution of these issues.

Accordingly, it is hereby ORDERED that Wellmark's Motion to Limit to the Administrative Record, Doc. 10, is GRANTED IN PART and DENIED IN PART as follows:

1. Johnson may not conduct discovery regarding any conflict of interest stemming from Wellmark's alleged status as both administrator and payor of claims and will not be permitted to conduct any further discovery in this case absent a showing of some other procedural irregularity in the administrative process; and

2. As this is a review of an administrative decision, the parties shall meet and confer and jointly submit to the Court, within thirty (30) days of the date of this order, a joint motion to amend and correct scheduling order detailing:

   a. Deadline for production of the administrative record;
   b. Final dates to file dispositive motions; and
   c. The Court will set other dates that might become necessary.

3. The review of the administrative decision will be *de novo*; and

4. Wellmark's motion to limit to the administrative record is DENIED at this point in the proceedings WITHOUT PREJUDICE.

Dated this 27th day of February, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK